**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **WALTER RICE, ID # 07079333,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **No. 3:08-CV-0152-L** |
| | § | |
| **ROSELINE MGBAKOR, et al.,** | § | |
| **Defendants.** | § | **Pretrial Management** |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b) and the District Court's *Standing Order of Reference*, filed July 3, 2008, this case was referred for pretrial management, including the determination of non-dispositive motions and findings of fact and recommendations to the District Court on dispositive motions. Before the Court is *Defendants' Motion For Summary Judgment* ("MSJ"), filed July 24, 2009, (doc. 61). Having reviewed the pertinent filings and the law applicable to the issues raised, the motion for summary judgment should be **GRANTED**.

### I.  BACKGROUND

In this action originally filed pursuant to 42 U.S.C. § 1983 in May 2005,[1] Plaintiff claims that Dr. Joe Hicks Oliver ("Dr. Oliver") abruptly stopped his medications and that Roseline Mgbakor ("Nurse Mgbakor") did not dispense prescribed medication in violation of his rights under the Eighth and Fourteenth Amendments while he was incarcerated in the Dallas County Jail in 2005. (Compl. at 3; Reply to Rule 7(a) at 1-2.)  He seeks monetary damages for Defendants' acts and omissions, which have allegedly caused a loss of vision.  (Compl. at 4.)

Verified medical records from the Dallas County Jail show that Plaintiff received medication from January 1 through 15, 2005.  (*See* App. attached to MSJ ("App.") at 98.)  On January 16, 2005,

---

[1] The original action is now identified as Cause No. 05-CV-1048-P.

Plaintiff was released from the jail because he had served his time. (*Id.* at 143-45, 229.)[2] Two days later, Dr. Oliver noted the release and discontinued all psychiatric medications and reminders in EMR[3]. (*Id.* at 143-44.)

On February 10, 2005, Plaintiff returned to the Dallas County Jail on a charge of delivery of a controlled substance. (*Id.* at 225, 227.) His medication was at home, and he reported that he had taken his medication the day before. (*Id.* at 13.) On February 14, 2005, jail personnel reviewed Plaintiff's medical chart and noted that he had no medications or medical problems, but another record shows a stated plan to resume medication and schedule Plaintiff for clinic. (*Id.* at 23, 110.)[4] The next day, Plaintiff was prescribed medication. (*Id.* at 105-06.)

Plaintiff received medication from February 16 through March 14, 2005, when it was put on hold by "Nurse Becky." (*See id.* at 96-97.) After interviewing Plaintiff on March 8, 2005, medical staff noted that he had "reported that he was on meds (not listed in EMR) and that he was doing ok." (*Id.* at 142.) That same day, Plaintiff commented to Dr. Oliver that "[t]hey started my meds within 2 days"; causing Dr. Oliver to note: "Patient reports receiving meds, but no meds are listed in the EMR. What is he taking?" (*Id.* at 140-41.) Because Plaintiff presented potentially serious complaints of black outs and night sweats, Dr. Oliver referred him to the medical department for additional consultation and evaluation. (*Id.* at 141, 214.) The hold on Plaintiff's medications resulted from that referral pending further evaluation and observation. (*Id.* at 215.)

Because Plaintiff "was complaining that his medications were stopped without cause," Dr.

---

[2] As reflected in a custodian affidavit, Plaintiff's custody records attached as Ex. F to App. (App. at 225-29) are the originals or exact copies of originals which are kept in the ordinary course of business by the Dallas County Sheriff's Department. (*See* App. at 224.)

[3] "EMR" refers to the electronic medical record. (*See* App. at 203.)

[4] Defendants aver that they signed neither of these documents. (Aff. at 215, 218.)

Oliver examined him again on March 21, 2005. (*Id.* at 138-39.)  The doctor prescribed medication, noted it on the EMR, and responded to Plaintiff's complaint as follows:  "The truth is that he was released and medications were [discontinued].  He later was readmitted and medications were not restarted."  (*Id.* at 138.)  Plaintiff's medication was resumed on March 29, 2005, and continued through June 19, 2005.  (*Id.* at 90-95.)[5]  Although the medical record reflects that Plaintiff was still prescribed medication as of June 20, 2005, (*see id.* at 27), no medical record pointed out to the Court reflects that Plaintiff received medication from June 20 through June 30, 2005, (*see id.* at 90-91 (duplicate copies of Medication Administration Record ("MAR") which direct the viewer to the "next MAR" for these dates)).[6]  In any event, Plaintiff received his medication in July and August 2005, until he was again released for time served on August 17, 2005, (*id.* at 87-88, 229).[7]  A medical record dated July 22, 2005, notes that medical personnel suspected that Plaintiff was not taking one medication.  (*Id.* at 137.)

A medical expert for Defendants opines that Plaintiff's vision loss was a normal part of aging and there is "no evidence to suggest that stopping medication caused visual problems."  (*Id.* at 205.) Nurse Mgbakor avers that she "never refused to administer medicine to an inmate when ordered by a doctor or physician" and has "never stopped an inmate's medicine unless ordered to do so by a doctor or physician."  (*Id.* at 217.)  Neither a nurse nor a Patient Care Assistant is permitted to pre-scribe medication for patients.  (*Id.*)

On July 24, 2009, Defendants moved for summary judgment based upon qualified immunity

---

[5]  One medication was changed in April 2005.  (App. at 94, 138.)

[6]  While recognizing the apparent gap in Plaintiff's received medication in June 2005, Defendants make no effort to explain it.  (*See* Def. Br. at 5.)

[7]  Plaintiff was also briefly detained in the Dallas County Jail on August 31, 2005.  (App. at 225, 229.)

and the absence of a constitutional violation.  (*See* Defs.' Br. Supp. MSJ ("Def. Br.") at 17-22.)  In response, Plaintiff filed objections to the motion.  (*See* Obj'n MSJ ("Pl.'s Resp.").)  Defendants have filed no reply.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.  To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255, neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's

summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc);

*Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the

movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the

existence of an element essential to his case and as to which he will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff.  *See*, *e.g.*, *Haines

v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam).  However, the courts have no obligation under

Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition

to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting

*Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).  Instead, a party opposing

summary judgment must "identify specific evidence in the record" that supports the challenged

claims and "articulate the precise manner in which that evidence supports [a challenged] claim."

*Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

### III.  QUALIFIED IMMUNITY

Defendants claim that they did not violate Plaintiff's constitutional rights, and they are pro-

tected by qualified immunity.  (*See* Def. Br. at 17-22.)

**A. Legal Standard**

A governmental employee who is sued for a constitutional violation pursuant to 42 U.S.C.

§ 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544

(5th Cir. 1992).  Qualified immunity protects government officials performing discretionary funct-

ions from suit and liability for civil damages to the extent their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, a court conducts a two-prong inquiry.  The first prong entails consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case.  *Id.* at 201.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id*. at 202.  It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to the case at hand.  *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle'...is now advisory.").  If the court answers both the constitutional violation and qualified immunity questions in the affirmative, the officer is not entitled to qualified immunity.  *Lytle*, 560 F.3d at 410.

The plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). To satisfy that burden on a motion for summary judgment, the plaintiff must produce evidence showing that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).  Even

*pro se* litigants must adhere to the requirement that they oppose summary judgment in accordance with Fed. R. Civ. P. 56(e).  *See Gordon v. Watson*, 622 F.2d 120, 122-23 (5th Cir. 1980).

## B. <u>Deprivation of Medical Care</u>

Plaintiff alleges that the deprivation of medical care, *i.e.*, his medication, violates the Eighth and Fourteenth Amendments.  (*See* Reply to Rule 7(a) at 1-2.)  Defendants address Plaintiff's claim as arising solely under the Eighth Amendment.  (*See* Def. Br. at 17.)

Although a convicted prisoner's treatment and his conditions of confinement are scrutinized under the Eighth Amendment's proscription of cruel and unusual punishments, *see Farmer v. Brennan,* 511 U.S. 825, 832 (1994), the Due Process Clause of the Fourteenth Amendment precludes the States from punishing a detainee who has not been adjudicated guilty, *see Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Nevertheless, when the plaintiff complains about episodic acts or omissions of particular individuals rather than general conditions of his confinement, the applicable standards under the Eighth and Fourteenth Amendments merge.[8]  *See Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir.1996) (en banc) (holding that the same standards apply in such circumstances).

Both the Eighth and Fourteenth Amendments require prison officials to provide inmates with adequate food, clothing, shelter, and medical care as well as to take reasonable measures regarding their safety.  *See Farmer,* 511 U.S. at 832 (Eighth Amendment); *Hare*, 74 F.3d at 650 (Fourteenth Amendment).  Liability cannot attach under either Amendment "unless the official had subjective knowledge of a substantial risk of serious harm to [the inmate] but responded with deliberate indif-ference to that risk."  *Hare*, 74 F.3d at 650; *accord Farmer,* 511 U.S. at 828.  To establish deliberate indifference, an inmate must show that the prison official (1) was "aware of the facts from which

---

[8]  Consequently, the Court need not determine whether Plaintiff was a convicted prisoner or merely a pre-trial detainee during his stay in the Dallas County Jail from February to August 2005.

an inference of excessive risk to the prisoner's health or safety could be drawn," and (2) "actually drew an inference that such potential for harm existed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *accord Farmer*, 511 U.S. at 837 (noting that deliberate indifference under the Eighth Amendment occurs only where a prison official subjectively "knows of and disregards a substantial risk to the inmate's health or safety"). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" but is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result," *id.* at 835, and it is "an extremely high standard to meet," *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

To demonstrate deliberate indifference to medical needs, the plaintiff must show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Indifference may be manifested by the response to the inmate's medical needs; intentional denying or delaying access to medical care; or intentional interference with prescribed treatment. *Estelle,* 429 U.S. at 104-05. An incorrect diagnosis by prison medical personnel does not suffice to state a constitutional violation, however. *Id.* at 105. Likewise, "an official's failure to alleviate a significant risk that he should have perceived but did not" constitutes neither an Eighth Amendment violation, *Farmer*, 511 U.S. at 838, nor a Fourteenth Amendment violation in an episodic-event context, *see Hare*, 74 F.3d at 650 (applying *Farmer* standard in such context). Mere negligence or medical malpractice does not rise to the level of a constitutional violation, *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008), nor does disagreement with a prescribed course of treatment absent exceptional circumstances, *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

In this case, Plaintiff has filed an unverified response to the motion for summary judgment

8

and has provided no evidence to support his opposition.  Although Plaintiff's verified complaint may

serve as competent summary judgment evidence "to the extent it satisfies the requirements of Fed.

R. Civ. P. 56(e)",[9] *see King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (verified complaint may

serve as competent summary judgment evidence); *Barnes v. Johnson*, 204 Fed. App'x 377, 378 (5th

Cir. 2006) (same) (per curiam), the complaint provides insufficient evidence to create a fact issue

in this case.  It merely alleges that Dr. Oliver abruptly stopped his medication and Nurse Mgbakor

failed to dispense prescribed medication and attributes a loss of vision to the acts or omissions of

Defendants.  (*See* Compl. at 3-4 and attached page.)  "Conclusory statements are not competent

evidence to defeat summary judgment." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345

(5th Cir. 2007).

In contrast, Defendants have proffered evidence that he did not receive his medication for

part of February and March 2005 because he was released from custody in January 2005 and

because potentially serious medical complaints needed to be evaluated.  The summary judgment

evidence does not show any deliberate indifference on the part of Defendants for these periods of

missed medication.[10]

As the party with the burden to overcome the asserted qualified immunity defense, Plaintiff

has simply failed to carry his evidentiary burden to raise a genuine issue of material fact on his claim

---

[9] Rule 56(e) requires that affidavits proffered in support or opposition of a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  It further requires that "[i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."  A party may rely on an unsworn declaration in lieu of an affidavit if the declaration satisfies the requirements of 28 U.S.C. § 1746, *i.e.*, the declaration is made "under penalty of perjury" and verified as "true and correct".  *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306-07 (5th Cir. 1988); *Barnes v. Johnson*, 204 Fed. App'x 377, 378 (5th Cir. 2006) (same) (per curiam).

[10] The medical record also appears to show a gap in medications in June 2005, but Plaintiff's specific allegations against Defendants are not based upon that gap.  Moreover, no summary judgment evidence shows that gap resulted from deliberate indifference on the part of either defendant.  Consequently, even if Plaintiff's claims encompass the June gap, the claims would not survive summary judgment.

that Dr. Oliver and Nurse Mgbakor responded with deliberate indifference to a substantial risk of serious harm to him by intentionally denying or delaying medical care by withholding his medications.   Defendants are therefore protected by qualified immunity and entitled to summary judgment on the episodic medical claims asserted against them.  *See Saucier*, 533 U.S. at 201.

## IV.  CONCLUSION

*Defendants' Motion For Summary Judgment* filed July 24, 2009, (doc. 61), should be **GRANTED**.  Because such ruling disposes of all remaining claims and defendants in this action, the Court should direct the Clerk of the Court to terminate Dr. Oliver and Nurse Mgbakor as defendants in this action and to close this action.

**SO RECOMMENDED** on this 18th day of September, 2009.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE